**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MALCOMB GARRETT,

            Plaintiff,

v.

EXPERIAN INFORMATION SOLUTIONS, INC.,
a foreign corporation, and
GILA LLC,
a Texas limited liability company d/b/a
MUNICIPAL SERVICES BUREAU,
a foreign corporation,

            Defendants.

Case No. 2:11-cv-12523
Hon. Lawrence P. Zatkoff
Mag. Mark A. Randon

_____

**EXPERIAN'S REPLY BRIEF IN SUPPORT OF ITS
MOTION FOR SUMMARY JUDGMENT**

**A.  Plaintiff's Facts Convey False Impressions**

The parties appear to agree that there is no genuine issue relative to the material facts of this case. However, Plaintiff's counter rendition of the facts takes some liberties which Defendant is compelled to address.

**1.  No Address on Tickets**

The MSB letters included in Plaintiff's dispute were completely void of any reference to the 8417 Nottingham property. The letters themselves did not state on their face the property to which they pertained. Yet Plaintiff's facts include statements like the following:

> "On or about March 22, 2011, Mr. Garrett received a letter from Municipal Services Bureau (MSB) demanding payment of $305 related to a ticket against the Property."

This statement makes it appear as though the MSB letters listed the subject property at 8417 Nottingham. Experian could not delete or updated the MSB tradelines based solely upon the information that Plaintiff had submitted.

## 2.  Experian Did Investigate

It is further a mischaracterization for Plaintiff to contend that Experian conducted **no** independent reinvestigation of the Plaintiff's dispute.  Just because Experian could not independently utilize the information provided by the Plaintiff to <u>delete</u> the MSB tradelines does not mean that Experian did nothing.  Experian reviewed the Plaintiff's dispute letter and the documents attached.  Upon concluding that the information was insufficient to delete the tradelines, Experian sent two ACDVs which, per Plaintiff's own testimony, accurately conveyed the Plaintiff's dispute.   This is far from doing nothing.  Further, as detailed in Experian's initial Brief in Support of Summary Judgment, this ADCV practice has repeatedly been found as a matter of law to be reasonable.

## 3. The Quit Claim Deed

Plaintiff contends that Experian somehow "rejected" Plaintiff's Quit Claim Deed as evidence.  Same is simply not true and is based upon an inaccurate rendition of the testimony of Experian's agent Jason Scott.  In his deposition on page 35 on which Plaintiff relies, Mr. Scott testified that Experian did not accept documents contained in the letter **to update the account** according to Mr. Garrett's request.  This does not mean the documents were ignored or otherwise "rejected".  It simple means they could not be used to update the account the way Plaintiff wanted; deletion.  Even Plaintiff acknowledges the information regarding the quit claim deed was included in the ACDV Experian sent.  To contend that same means Experian "rejected" the deed mischaracterizes Mr. Scott's testimony.  The evidence demonstrates that Experian utilized the deed information in the ACDVs it sent to Gila, LLC.

Plaintiff compounds this mischaracterization when, on page 6 of his brief, he contends: "Yet, Experian rejected this quit claim deed as proof of the fact that the Plaintiff had not owned the Property since August of 2005." Not only did Experian not "reject" the quit claim deed, it goes without saying that the quit claim deed only reflects that the property was transferred as of the date of the deed. It is not conclusive as to who owned the property after that date. Who is to say the property was not transferred back to the plaintiff as some later date.

Plaintiff further misconstrues Mr. Scott's testimony when he writes in his brief at letter d on page 2: "Experian had no idea what action it should have taken in response to the Quit Claim Deed" citing to page 32 of Mr. Scott's deposition testimony. A review of Mr. Scott's testimony on page 32 relative to the Quit Claim Deed reflects the following:

> Q: What kind of action would you have expected the quitclaim deed to have contained in order for Experina to have acted on it differently?
>
> A: I'm not an expert or entirely familiar with what quitclaim deeds will absolve somebody of responsibility, so I'm not certain.

Plaintiff's representation of this testimony is clearly inaccurate at best.

### 4. Jason Scott's Testimony Further Misconstrued

Plaintiff contends that Mr. Scott testified that only two kids of documents would have persuaded Experian to remove the disputed tradelines; a letter from the furnisher or a court order. Plaintiff has once again failed to accurately reflect Mr. Scott's testimony. On page 36, Mr. Scott indicated on line 8, "That there could be other documents; however, I simply cannot think of them at the moment." Again on line 14 he states, "There could be other documents." And yet again on line 17 he states, "Again, there could be other documents; however, I'm simply not able to recollect anything at this time."

### B. No Illegal Shift of the Burden to Investigate

After misconstruing Mr. Scott's testimony, Plaintiff then contends that Experian is somehow illegally shifting the burden of reinvestigation to the Plaintiff by "requiring" that a Plaintiff either get a letter from the furnisher or obtain a court order. Plaintiff is mixing apples and oranges. Mr. Scott never said that a Plaintiff **has to submit** a letter from a furnisher or obtain a court order for Experian to reinvestigate a tradeline. Rather, Mr. Scott testified on page 34 that, "If Experian does not have a document that it can **accept to update the account according to the consumer's request**, then an ACDV would be sent." In other words, if the documents submitted by a consumer cannot be used to perform the updated being sought by the consumer, a reinvestigation would be done by Experian. Plaintiff's contention that this somehow transfers Experian's reinvestigation duty to the consumer is simple wrong.

### C. *Henson v. CSC Credit Services*

In the initial law section of its brief, Plaintiff cites the following from *Henson v CSC Credit Services*, 29 F3d 280 (7th Cir 1994).

> Whether the credit reporting agency has a duty to go beyond the original source will depend, in part on whether the consumer has alerted the reporting agency to the possibility that the source may be unreliable or the reporting agency itself knows or should know that the source is unreliable. The credit reporting agency's duty will also depend on the cost of verifying the accuracy of the source versus the possible harm inaccurately reported information may cause the consumer. *Id.* at 287.

Nowhere in his brief does Plaintiff contend that he alerted Experian that Gila, LLC was an unreliable source or that Experian had a reason to know that Gila, LLC was an unreliable source. Per Plaintiff's own cited standard, there was no reason for Experian to go beyond the original source in conducting its reinvestigation because there was nothing to demonstrate that Gila, LLC was unreliable. This is a very different scenario than that in *Pinner v Schmidt*, 805 F2d 1258 (5th Cir. 1986) upon which *Henson* relies. In *Pinner*, it was unreasonable for the CRA to only re-

4

verify the information with the source's agent when the plaintiff had notified the CRA that he had a personal dispute with that very agent. This is a very different circumstance from the case at bar.

Plaintiff's reliance on *Henson* to support his contention that Experian was duty bound to spend $100 to order its own title search is even more ludicrous.

> "Using the balancing test set forth by the *Henson* Court, supra, Experian could and should have obtained this title search itself. The $100 cost far outweighs the costs that the parties have incurred to remove the disputed trade lines from Mr. Garrett's consumer credit files."

This is **not** the balancing test set forth in *Henson*. *Henson* does not balance potential litigation costs of the parties. Plaintiff's argument is wholly meritless and illogical as well as a complete misapplication of the law he himself cites. Further, the argument that a CRA should be required to order title work and spend $100 to handle one consumer dispute is simply not credible given the volume of disputes handles by CRAs every day. Even more outrageous is the fact that the title work itself for 8417 Nottingham yields nothing conclusive because there is nothing within that title work that ties that property to the MSB tickets. Even if Experian had paid $100 and ordered the title work, which it was **not** duty bound to do, it still would have been unable to conclusively determine that the MSB tradelines related to the subject property.

Respectfully Submitted,

/s/Tamara E. Fraser
Tamara E. Fraser (P51997)
Attorney for Defendant Experian
5435 Corporate Drive, Suite 225
Troy, MI 48098
(48) 952-0400

DATED: May 3, 2012                    tfraser@fhwnlaw.com

**CERTIFICATE OF SERVICE**

I, Tamara E. Fraser, hereby certify that on the 3rd day of May, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will automatically send notification of such filing to:

    Gary D. Nitzkin, Esq.

    Charity A. Olson, Esq.

                             /s/ Tamara E. Fraser
                          Tamara E. Fraser (P51997)
                          Frank Haron Weiner
                          Attorneys for Defendant Experian Information Solutions, Inc.
                          5435 Corporate Drive, Suite 225
                          Troy, Michigan 48098
                          (248) 952-0400
                          tfraser@fhwnlaw.com