UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALCOMB GARRETT,[1]

      Plaintiff,

                                 Case No. 11-12523

v.                                Hon. Lawrence P. Zatkoff

EXPERIAN INFORMATION
SOLUTIONS, INC.,[2]

      Defendant.

_____/

## OPINION AND ORDER

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on May 29, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter is before the Court on cross-motions for summary judgment on the sole

remaining count pled in Plaintiff's Complaint (Count IV), wherein Plaintiff alleges that Defendant

---

[1]Throughout this litigation, starting with the Complaint, the parties have identified Plaintiff as "Malcomb Garrett." The Court notes, however, that the quit claim deed discussed herein, Plaintiff's dispute letter to Defendant, Plaintiff's deposition transcript, and Plaintiff's credit report generated by Defendant identify Plaintiff as "Malcolm Garrett." In addition, documents attributable to the City of Detroit identify Plaintiff as "Malcom Garrett," "Malcum Garrett" and "Malcolm Garrett." For purposes of this Opinion and Order, the Court shall retain "Malcomb Garrett" in the caption, however, the findings and conclusions made herein also shall apply to and against "Malcom Garrett," "Malcum Garrett" and "Malcolm Garrett."

[2]Plaintiff previously accepted an Offer of Judgment tendered by a second named defendant, Gila LLC, d/b/a Municipal Services Bureau ("MSB"), with respect to Plaintiff's claims in Counts I and II of the Complaint, both of which were solely against MSB (see Docket #s 20 and 53).

**willfully** violated the Fair Credit Reporting Act ("FRCA" or the "Act").[3]  Specifically, the Court

shall now address:

1.      Defendant's Motion for Summary Judgment (Docket #34); and

2.      Plaintiff's Motion for Summary Judgment (Docket #43).

The Court finds that the facts and legal arguments are adequately presented in the parties' papers

such that the decision process would not be significantly aided by oral argument.  Therefore,

pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motions be resolved on the

briefs submitted.  For the following reasons, Defendant's Motion will be GRANTED, Plaintiff's

Motion will be DENIED, and Plaintiff's cause of action against Defendant shall be DISMISSED

WITH PREJUDICE.


## II. BACKGROUND

For some period of time prior to August 11, 2005, Plaintiff owned property located at 9417

Nottingham in Detroit, Michigan ("the Property").  On August 11, 2005, Plaintiff sold the property

to Vincent Bradford and signed a quit claim deed, which is stamped with a recorded date of

September 14, 2005.

On or about March 22, 2011, Plaintiff received several letters from MSB.  On behalf of the

City of Detroit, MSB was demanding payment with respect to several unpaid tickets issued by the

City of Detroit.  The tickets identified in the MSB demand letters were issued in 2007 and 2009,

several years after Plaintiff sold the Property.  On or about April 5, 2011, Plaintiff obtained copies

---

[3]In addition to the resolution of the claims solely against MSB in Counts I and II of the
Complaint, Plaintiff and Defendant have stipulated to the dismissal of Count III of the
Complaint, a claim asserted against solely against Defendant (Docket #31).

2

of his consumer credit reports, including one generated by Defendant.  Plaintiff's credit report generated by Defendant contained two trade lines from MSB.  One was in the amount of $305 (related to a ticket issued by the City of Detroit on October 19, 2009), and one was in the amount of $85 (related to a ticket issued by the City of Detroit on July 21, 2009).

On April 14, 2011, Plaintiff, through counsel, sent a dispute letter to Defendant, wherein Plaintiff disputed the validity of both of the MSB trade lines furnished to Defendant by MSB.  On the same day, Plaintiff, through counsel, sent a similar dispute letter to another credit report agency, Trans Union, regarding the same trade lines.  In the dispute letter to Defendant, Plaintiff explained that: (a) he had not owned the Property since 2005, and (b) the two trade lines were related to tickets issued in "2007-2009, after the [P]roperty was sold."  Plaintiff enclosed with the dispute letter: (1) a copy of his quit claim deed from 2005, and (2) three separate documents from MSB that were addressed to Plaintiff, each entitled "Response to Written Inquiry."  All three MSB documents were dated March 22, 2011, and were similar in nature, but each represented a separate amount previously assessed by the City of Detroit.  The first MSB document reflects an amount due of $305.00 for "Failure to obtain certificate of registration for rental property," with an apparent infraction date of October 19, 2009. It contains a reference number of IW1619 and an account number of 09028288DAH. The second MSB document reflects an amount due of $1,025.00 for three different property infractions, all with dates in 2007.[4]  The third MSB document reflects an amount due of

---

[4]It is not evident to the Court why the second MSB letter (*i.e.*, the one related to the account balance of $1,025.00) was included in the items sent to Defendant because the underlying amount was not a trade line on Plaintiff's credit report generated by Defendant, nor was Plaintiff requesting that Defendant take any action with respect to that trade line.  It is undisputed that the only MSB trade lines on Plaintiff's April 5, 2011, consumer credit report generated by Defendant were the $305.00 and $85.00 amounts identified in the first and third MSB documents, respectively.

$85.00 for "Excessive weeds or plant growth," with an apparent infraction date of July 21, 2009. It contains a reference number of IW1620 and an account number of 09033922DAH. Significantly, none of the three MSB documents submitted by Plaintiff to Defendant identified a property address to which the ticket pertained.

Defendant received Plaintiff's dispute letter on April 20, 2011. After reviewing the dispute letter and the exhibits enclosed therein, an agent of Defendant determined that Defendant was unable to delete the MSB trade lines based upon the information provided with the dispute letter. On April 27, 2011, Defendant's agent sent correspondence to Plaintiff indicating that: (1) Defendant was unable to delete the MSB trade lines based on the information provided in the dispute letter, and (2) Defendant would be verifying the information it was reporting with the source who was providing that information to Defendant (*i.e.*, MSB). Defendant then sent an automated consumer dispute verification form ("ACDV") to MSB with respect to each of the two trade lines at issue. Defendant provided the following notations on both ACDVs:

    A.    With respect to the entry for "Dispute Code 1:", Defendant stated:

> Consumer states inaccurate information. Provide or
> confirm complete ID and account information

    B.    With respect to the entry for "FCRA Relevant Information:", Defendant stated:

> PROPERTY SOLD IN 2005 TICKETS FROM 2007
> THRU 2009 SENT QUIT CLAIM DEED FILED
> SEPT 14 2005

MSB responded to the ACDVs by verifying that the $85.00 trade line was accurate but directed Defendant to delete the $305.00 trade line. As a result of MSB's responses, Defendant deleted the $305.00 trade line and retained the $85.00 trade line on Plaintiff's credit report.

Defendant mailed Plaintiff the dispute results and actions taken on May 13, 2011. On May

4

16, 2011, Trans Union deleted both trade lines furnished by MSB.  On June 10, 2011, Plaintiff filed

the instant action against Defendant and MSB.  On June 30, 2011, MSB sent Defendant an

Automated Universal Data form, on which MSB directed Defendant to delete the remaining $85.00

trade line.  On July 1, 2011, Defendant deleted the $85.00 trade line.


### III. LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(a).  *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[T]he plain language

of Rule 56[] mandates the entry of summary judgment . . . against a party who fails to make a

showing sufficient to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial.").  A party must support its assertions by:

> (A) citing to particular parts of materials in the record, including
> depositions, documents, electronically stored information, affidavits
> or declarations, stipulations (including those made for purposes of the
> motion only), admissions, interrogatory answers, or other materials;
> or
>
> (B) showing that the materials cited do not establish the absence or
> presence of a genuine dispute, or that an adverse party cannot
> produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1).  "The court need consider only the cited materials, but it may consider other

materials in the record."  Fed. R. Civ. P. 56(c)(3).

The moving party bears the initial burden of demonstrating the absence of any genuine

dispute as to a material fact, and all inferences should be made in favor of the nonmoving party.

*Celotex*, 477 U.S. at 323.  The moving party discharges its burden by "'showing'–that is, pointing

out to the district court–that there is an absence of evidence to support the nonmoving party's case."

*Horton v. Potter*, 369 F.3d 906, 909 (6th Cir. 2004) (citing *Celotex*, 477 U.S. at 325)).

Once the moving party has met its initial burden, the burden then shifts to the nonmoving party, who "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient [to defeat a motion for summary judgment]; there must be evidence on which the jury could reasonably find for the [nonmoving party]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

# IV.  ANALYSIS

## A.    Applicable Law

The following provisions of the Act are relevant in this case:

(a) Reinvestigations of disputed information

    (1) Reinvestigation required

        (A) In general

> Subject to subsection (f) of this section, <u>if the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency directly,</u> or indirectly through a reseller, of such dispute, <u>the agency shall, free of charge, conduct a **reasonable** reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file</u> in accordance with paragraph (5), before the end of the 30-day period beginning on the date on which the agency receives the notice of the dispute from the consumer or reseller.

* * * * *

6

(2) Prompt notice of dispute to furnisher of information

(A) In general

Before the expiration of the 5-business-day period beginning on the date on which a consumer reporting agency receives notice of a dispute from any consumer or a reseller in accordance with paragraph (1), the agency shall provide notification of the dispute to any person who provided any item of information in dispute, at the address and in the manner established with the person. The notice shall include all relevant information regarding the dispute that the agency has received from the consumer or reseller.

* * * * *

(4) Consideration of consumer information

In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information.

(5) Treatment of inaccurate or unverifiable information

(A) In general

If, after any reinvestigation under paragraph (1) of any information disputed by a consumer, an item of the information is found to be inaccurate or incomplete or cannot be verified, the consumer reporting agency shall—

(i) promptly delete that item of information from the file of the consumer, or modify that item of information, as appropriate, based on the results of the reinvestigation; and

(ii) promptly notify the furnisher of that information that the information has been modified or deleted from the file of the consumer.

15 U.S.C. §1681i(a)(1)-(5).  As set forth in *Henson v. CSC Credit Services*, 29 F.3d 280, 287 (7th Cir. 1994), in considering the reasonableness of a credit reporting agency's compliance with its duties under the Act, a court may utilize the following balancing test:

7

> Whether the credit reporting agency has a duty to go beyond the original
> source will depend, in part on whether the consumer has alerted the
> reporting agency to the possibility that the source may be unreliable or
> the reporting agency itself knows or should know that the source is
> unreliable. The credit reporting agency's duty will also depend on the
> cost of verifying the accuracy of the source versus the possible harm
> inaccurately reported information may cause the consumer.

As to Count IV, Plaintiff has pled that Defendant committed a willful violation of the Act.

Relying on United States Supreme Court precedent, the Tenth Circuit recently stated:

> A "willful" violation [of the Act] is either an intentional violation or
> a violation committed by an agency in reckless disregard of its duties
> under [the Act]. *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 57-58 []
> (2007). Recklessness is measured by "an objective standard: action
> entailing an unjustifiably high risk of harm that is either known or so
> obvious that it should be known." *Id*. at 68[.] "[A] company subject
> to [the Act] does not act in reckless disregard of it unless the action
> is not only a violation under a reasonable reading of the statute's
> terms, but shows that the company ran a risk of violating the law
> substantially greater than the risk associated with a reading that was
> merely careless." *Id*. at 69[.]

*Birmingham v. Experian Info. Solutions, Inc*., 633 F.3d 1006, 1009 (10th Cir. 2011).

**B.    Analysis**

*1.    Quit Claim Deed*

It is undisputed that Plaintiff provided Defendant with a properly recorded quit claim deed in April 2011, which deed established that Plaintiff sold the Property in 2005.  It is also undisputed that Defendant accepted the quit claim deed at face value, as reflected by including the following language on the ACDVs sent to MSB when following up on Plaintiff's dispute: "PROPERTY SOLD IN 2005 TICKETS FROM 2007 THRU 2009 SENT QUIT CLAIM DEED FILED SEPT 14, 2005." Finally, it is undisputed that Defendant would not accept the quit claim deed as proof that the trade lines should be removed from Plaintiff's credit report.  Plaintiff first argues that Defendant had no

8

good reason for rejecting a properly recorded quit claim deed from 2005 as proof that Plaintiff did not own the Property in 2007-09.

This argument is meritless. None of the three MSB documents submitted by Plaintiff to Defendant includes, on its face, a property address to which the ticket issued by the City of Detroit pertained. Rather, each MSB document identifies an individual against whom the ticket was assessed. Thus, even if Defendant accepted the quit claim deed as proof that Plaintiff did not own the Property after 2005 (which it appears, in fact, Defendant did), the quit claim deed does not constitute evidence that the tickets pertained to the Property. In addition, the Court notes that the address of the seller on the quit claim deed (*i.e.*, Plaintiff and his wife) is another City of Detroit address. This fact undermines Plaintiff's contention that Defendant should have looked at the quit claim deed and determined that a property code violation issued by the City of Detroit after 2005 could not have been validly issued against Plaintiff. As the quit claim deed identified Plaintiff as owning other property in the City of Detroit at the time of the sale of the Property, Defendant (or anyone else, including this Court) could reasonably believe that a property code violation issued against Plaintiff in 2007-09 was validly issued against Plaintiff, especially where (as here) the information provided by Plaintiff (namely, the MSB letter) did not contain a property address to which the property code violation pertained.

### 2.    *Reasonable Investigation*

Plaintiff also contends that Defendant did not conduct a reasonable reinvestigation, as Section 1681i(a)(1)(A) requires, for two reasons.

#### a.    Title Search/Online Search

Plaintiff first argues that Defendant could have conducted an online search and/or a title

search on the Property to discover that the $85.00 trade line "should NOT have been placed on Plaintiff's consumer credit file" (capitalization in Plaintiff's briefs). For the reasons discussed in Section IV.B.1. above, conducting a title search and confirming that Plaintiff did not own the Property after 2005 would shed no light on whether the $85.00 trade line should be on Plaintiff's credit report. As to the reasonableness of conducting an online search regarding the trade line at issue, for the reasons set forth below, the Court finds that Plaintiff's exhibits completely eviscerate Plaintiff's contention that an online search would have resolved the $85.00 trade line at issue.

In his response to Defendant's motion for summary judgment, Plaintiff attached as part of Exhibit 3 the MSB document pertaining to Account Number 09033922DAH, which also reflected a violation date of "07/21/09." In each of Exhibits 4 and 5, Plaintiff attached an "On-Line BVN Search/Information Screen" from the City of Detroit, Department of Administrative Hearings. Both Exhibits 4 and 5 include the same list of seven violations issued by the City of Detroit for violations associated with the Property (9417 Nottingham, Detroit, Michigan). The information identified with respect to each of those seven violations includes: (a) a corresponding account number, (b) the individual named on the ticket, and (c) the amount due. Three of the violations identify Vincent Bradford – and the other four violations identify Plaintiff – as the individual associated with the violation. Exhibit 4 also provides detail regarding one of the two $305.00 amounts on the list of seven violations, including: (1) the account number for the violation (09028289DAH), (2) the date the violation was issued (10/19/2009), and (3) the violator's name (Malcom Garrett). Without question, the $305.00 violation associated with account number 09028289DAH corresponds to the $305.00 MSB trade line on Plaintiff's credit report generated by Defendant. As noted above, that $305.00 MSB trade line was removed by Defendant on or before May 13, 2011, as Defendant

10

communicated to Plaintiff in the letter of the same date.

Exhibit 5 also provides detail regarding one of the two $85.00 amounts on the list of seven violations, including: (1) the account number for the violation (08033045DAH), (2) the date the violation was issued (7/14/2008), and (3) the violator's name (Vincent Bradford). Thus, although the amount of the violation on Exhibit 5 was the same amount as on the second offending MSB trade line and the third MSB document in Exhibit 3 ($85.00), the account number (08033045DAH on Exhibit 5) and the date the violation was issued (7/14/2008 on Exhibit 5) do not correspond to the account number (09033922DAH) or the date (07/21/2009) on the $85.00 MSB trade line and the third MSB document in Exhibit 3, *i.e.*, the MSB document associated with the $85.00 trade line.[5] In fact, none of the accounts number listed with respect to the seven violations associated with the Property (as set forth on Exhibits 4 and 5) match the account number on the third MSB document in Exhibit 3, *i.e.*, the MSB document associated with the $85.00 trade line. Thus, the Court concludes that there is no reason Defendant (or anyone else, including this Court) should find that the $85.00 MSB trade line for account number 09033922DAH (as reflected on Plaintiff's credit report issued by Defendant and as set forth on the third MSB document in Exhibit 3): (1) corresponds to the Property, and/or (2) does not correspond to Plaintiff.

For these reasons, the Court finds that, even if Defendant had conducted an online search of the tickets associated with the Property, Defendant could not have been any more certain of the address associated with the $85.00 MSB trade line that is the basis for Plaintiff's claim than

---

[5]The Court also notes that the violator's name on the violation associated with account number 08033045DAH is Vincent Bradford, not Malcom Garrett (the individual named on the third MSB document in Exhibit 3).

Defendant was without conducting an online search.[6]

                b.    Testimony of Defendant's Representative

Finally, Plaintiff notes that Defendant's representative stated that the only two kinds of documents Defendant would accept as proof that the trade lines were erroneous (such that Defendant would remove the disputed trade lines) were: (a) a letter from the furnisher of the disputed trade lines, and (b) a court order. Based on the position of the Defendant's representative, Plaintiff argues that Defendant had no intention of conducting any reinvestigation. The Court finds that Plaintiff's argument is: (1) based on an misguided interpretation of what the Act requires, and (2) factually erroneous.

First, the Act requires a credit reporting agency such as Defendant to conduct a reinvestigation, the scope of which depends on the circumstances of the case. As many courts have held, the practice of using ACDVs in the reinvestigation process is reasonable as a matter in law. *See, e.g., Dickens v. Trans Union Corp.*, 18 Fed. App'x 315 (6th Cir. 2001)*; Davis v. Equifax Info. Servs.*, 346 F.Supp.2d 1164 (N.D. Ala, 2004); *Quinn v. Defendant Solutions*, 2004 WL 609357 (N.D. Ill 2004); *Lee v. Experian Info. Solutions*, 2003 WL 22287351 (N.D. Ill 2003). While a credit reporting agency may have a duty to go beyond the original source (in this case, MSB), such duty usually is not triggered unless there is some evidence that the consumer has alerted the reporting agency that the original source is unreliable – or the consumer reporting agency knows or should have known that the original sources is unreliable. *See, e.g., Henson*, 29 F.3d at 287. In this case, Plaintiff has not even <u>alleged</u> (to say nothing of offered any <u>evidence</u>) that: (a) MSB is unreliable,

---

[6]For these reasons, the Court need not, and does not, address the *Henson* balancing test factors with respect to this matter.

12

(b) Plaintiff informed Defendant that MSB is unreliable, or (c) Defendant knew or should have had reason to know that MSB is unreliable. As such, when Defendant sent the ACDVs to MSB as part of its reinvestigation, Defendant did not act unreasonably but instead acted in compliance with the requirements of the Act. Moreover, as the practice of sending ACDVs to the original source is reasonable, the Court finds, as a matter of law, that Defendant could not have been committing a willful violation of its duty to reinvestigate.

Second, Defendant: (1) reviewed the information set forth in and attached to Plaintiff's dispute letter, (2) included such information on the ACDVs Defendant prepared, and (3) sent the ACDVs to the original source for the trade line (MSB). Based on the foregoing actions, the Court finds that Defendant did, in fact, conduct a reasonable reinvestigation.[7]

Accordingly, the Court rejects Plaintiff's argument that Defendant did not have any intent of conducting a reinvestigation – and any argument that Defendant did not conduct a reasonable reinvestigation.

### 3.     Designation of "Dispute" on Plaintiff's Credit Report

In Defendant's motion for summary judgment, Defendant assumes that Plaintiff's claim of willful violation of the Act is based, in part, on Defendant's failure to place the word "disputed" on the $85.00 MSB trade line that was retained on Plaintiff's credit report after Defendant's investigation of Plaintiff's dispute letter. Plaintiff does not address this argument in his response brief or in his motion for summary judgment. As such, the Court finds that Plaintiff has waived any such argument or claim. In the interest of completeness, however, the Court shall also address the

---

[7]The Court also notes that Plaintiff has failed to cite any case that requires a credit reporting agency to conduct an independent investigation under the circumstances of this case.

merits of the argument.

Most significantly, the Act does not impose upon a credit reporting agency any duty to place the word "disputed" on a trade line that is disputed by a consumer but retained after reinvestigation. 15 U.S.C. §1681i(a)(6)(b) outlines the procedures to be used in cases of disputed accuracy and is wholly void of such a requirement:

> **Statement of Dispute**. – If the reinvestigation does not resolve the dispute, <u>the consumer may file a brief statement setting for the nature of the dispute</u>. The consumer reporting agency may limit such statements to not more than one hundred words if it provides the consumer with assistance in writing a clear summary of the dispute.

At his deposition, Plaintiff testified that he never requested that Defendant add a Statement of Dispute to the $85.00 MSB trade line that Defendant retained after conducting the April 2011 reinvestigation and notifying Plaintiff of the results of that reinvestigation. As Plaintiff never requested that a Statement of Dispute be added to his credit report, Defendant could not have willfully failed to add a consumer statement with respect to the $85.00 MSB trade line. Therefore, the Court concludes, as a matter of law, that Defendant did not commit a willful violation of the Act when it did not add any designation that the $85.00 MSB trade line at issue was in dispute.

*4.   Conclusion*

For the reasons set forth above, the Court finds that Plaintiff has failed to create a genuine dispute of material fact that Defendant acted unreasonably when reinvestigating the offending trade lines. Thus, the Court also must conclude, as a matter of law, that there is no genuine dispute of material fact that Defendant <u>willfully</u> failed to conduct a reasonable reinvestigation, as required for Plaintiff to survive Defendant's motion for summary judgment and prevail on its own motion for summary judgment. Accordingly, the Court denies Plaintiff's motion for summary judgment and

14

grants Defendant's motion for summary judgment.

## V.  CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that:

        A.     Defendant's Motion for Summary Judgment (Docket #34) is GRANTED;

        B.     Plaintiff's Motion for Summary Judgment (Docket #43) is DENIED; and

        C.     Plaintiff's cause of action against Defendant shall be DISMISSED WITH PREJUDICE.

Judgment shall be entered accordingly.

     IT IS SO ORDERED.


                      S/Lawrence P. Zatkoff
                      LAWRENCE P. ZATKOFF
                      UNITED STATES DISTRICT JUDGE

Dated:  May 29, 2012

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of this Order was served upon the attorneys of record by electronic or U.S. mail on May 29, 2012.


                      S/Marie E. Verlinde
                      Case Manager
                      (810) 984-3290