UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MALCOMB GARRETT,

    Plaintiff,                                            Case No. 11-12523

v.                                                       Hon. Lawrence P. Zatkoff

GILA LLC, d/b/a MUNICIPAL
SERVICES BUREAU,

    Defendant.
_____/

**OPINION AND ORDER**

AT A SESSION of said Court, held in the United States Courthouse,
in the City of Port Huron, State of Michigan, on December 20, 2012

PRESENT: THE HONORABLE LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

**I.  INTRODUCTION**

This matter is before the Court on Plaintiff's motion for attorney's fees and costs [dkt 56].  Defendant filed a response, and Plaintiff did not file a reply.  The Court finds that the facts and legal arguments are adequately presented in the parties' papers such that the decision process would not be significantly aided by oral argument.  Therefore, pursuant to E.D. Mich. L.R. 7.1(f)(2), it is hereby ORDERED that the motion be resolved on the briefs submitted.  For the following reasons, Plaintiff's motion for attorney's fees and costs is GRANTED IN PART and DENIED IN PART.

## II. BACKGROUND

On or about March 22, 2011, Plaintiff received several letters from Defendant. On behalf of the City of Detroit, Defendant was demanding payment with respect to several unpaid tickets issued by the City of Detroit. On or about April 5, 2011, Plaintiff obtained copies of his consumer credit reports, including one generated by Experian Information Solutions, Inc., a co-defendant in this action ("Experian"). Plaintiff's credit report generated by Experian contained two trade lines from Defendant. One was in the amount of $305 (related to a ticket issued by the City of Detroit on October 19, 2009), and one was in the amount of $85 (related to a ticket issued by the City of Detroit on July 21, 2009).

On April 14, 2011, Plaintiff, through counsel, sent a dispute letter to Experian, wherein Plaintiff disputed the validity of both of Defendant's trade lines furnished to Experian by Defendant. On the same day, Plaintiff, through counsel, sent a similar dispute letter to another credit report agency, Trans Union, regarding the same trade lines.

Experian received Plaintiff's dispute letter on April 20, 2011. On April 27, 2011, Experian's agent sent correspondence to Plaintiff indicating that: (1) Experian was unable to delete Defendant trade lines based on the information provided in the dispute letter, and (2) Experian would be verifying the information it was reporting with the source who was providing that information to Experian (*i.e.*, Defendant). Upon receiving a verification request from Experian, Defendant verified that the $85.00 trade line was accurate but directed Experian to delete the $305.00 trade line. As a result of Defendant's responses, Experian deleted the $305.00 trade line and retained the $85.00 trade line on Plaintiff's credit report.

Experian mailed Plaintiff the dispute results and actions taken on May 13, 2011. On May 16, 2011, Trans Union deleted both trade lines furnished by MSB. On June 10, 2011, Plaintiff

filed the instant action against Defendant and Experian.  On June 30, 2011, Defendant sent Experian an Automated Universal Data form, on which Defendant directed Experian to delete the remaining $85.00 trade line.  On July 1, 2011, Experian deleted the $85.00 trade line.

On October 31, 2011, the Court entered an Order of Judgment as to Defendant pursuant to Plaintiff's acceptance of Defendant's Offer of Judgment in the amount of $1,000, "plus costs and reasonable attorney fees incurred on or before October 31, 2011."  On June 14, 2012, over seven months after the Order of Judgment was entered, and two weeks after the Court entered an Opinion and Order granting Experian's motion for summary judgment (*i.e.*, determining that Plaintiff's cause of action lacked merit), Plaintiff filed the instant motion seeking $7,688.00 in attorney fees and costs.

### III.  ANALYSIS

According to Plaintiff, the Offer of Judgment tendered by Defendant and accepted by Plaintiff in this case shows that: (1) Plaintiff's action against Defendant was successful, and (2) Plaintiff is entitled to reasonable attorney's fees and costs under the Fair Credit Reporting Act, 15 U.S.C. §§ 1681 *et seq*. (the "Act").

**A.     Applicable Law**

The Act provides for the shifting of costs and attorney fees from Plaintiff to Defendant at Section 1681o, which provides, in part:

> (a) In general. Any person who is negligent in failing to comply with any requirement imposed under this title with respect to any consumer is liable to that consumer in an amount equal to the sum of-

3

> (1) any actual damages sustained by the consumer as a result of the failure; and
>
> (2) in the case of any successful action to enforce any liability under this section, the costs of the action together with reasonable attorney's fees as determined by the court.

As the Supreme Court has stated, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours *reasonably* expended on the litigation multiplied by a *reasonable* hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983) (emphasis added). "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed. Where the documentation of hours is inadequate, the district court may reduce the award accordingly." *Id.*

The Sixth Circuit has approved the consideration of the twelve factors first enunciated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), when analyzing the reasonableness of a requested fee. *See Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). The *Johnson* factors are:

> (1) the time and labor required by a given case;
> (2) the novelty and difficulty of the questions presented;
> (3) the skill needed to perform the legal service properly;
> (4) the preclusion of employment by attorney due to acceptance of the case;
> (5) the customary fee;
> (6) whether the fee is fixed or contingent;
> (7) time limitations imposed by the client or the circumstances;
> (8) the amount involved and the results obtained;
> (9) the experience, reputation, and ability of the attorneys;
> (10) the "undesirability" of the case;
> (11) the nature and length of the professional relationship with the client; and
> (12) awards in similar cases.

488 F.2d at 717-19.

**B.    Untimeliness Not a Bar to Award**

Defendant objects to Plaintiff's motion as untimely, and Defendant asserts that the motion is merely an attempt to recover an unreasonable award of fees in light of the case being dismissed. The Court agrees that the motion is unreasonably late and appears to be filed primarily because Plaintiff's case was dismissed. Such conclusions, however, have little relevance because, in its Offer of Judgment and in the Court's Order of Judgment, Defendant agreed to pay costs and reasonable attorney fees incurred by Plaintiff prior to October 31, 2011. Therefore, the Court will evaluate the merits of the motion.

**C.    Merits of Plaintiff's Fee Request**

Plaintiff attaches affidavits of the attorney and the two paralegals who spent time pursuing Plaintiff's claims. Plaintiff claims $5,010.00 in attorney fees based on the time Attorney Gary D. Nitzkin spent pursuing Plaintiff's case (16.7 hours), multiplied by a billing rate of $300.00/hour. Plaintiff also seeks $2,268.00 in paralegal fees for 16.2 hours of work, multiplied by a billing rate of $140.00/hour for Julie LaManna and Brandy Moore. In addition, Plaintiff claims he has incurred $410.00 in costs pursuing his claims. Thus, in the aggregate, Plaintiff seeks an award of $7,688.00 for obtaining a $1,000 Offer of Judgment in a case that was ultimately dismissed on the merits. Other than reciting the language of Section 1681o(a), Plaintiff offers no authority–and no argument–that demonstrates that the number of hours, billing rates or attorney (and paralegal) fees he seeks are reasonable.

*1.    Most of the <u>Johnson</u> Factors*

Plaintiff did not acknowledge the existence of the *Johnson* factors, and Defendant accurately notes that Plaintiff bears the burden of establishing that he is entitled to the requested

5

award. *Reed v. Rhodes*, 179 F.3d 453, 472; *Hensley*, 461 U.S. at 434, 437. Because Plaintiff provided no discussion of the *Johnson* factors and Defendant set forth only a cursory review of the *Johnson* factors, the Court will not address each factor in great detail.

This case was not a complicated one, and it did not involve any novel or difficult questions of law. The skill set required to perform the legal service was minimal, as evidenced by the fact that most of the work was handled by paralegals. There is no indication Plaintiff's counsel turned down any other business to work on this case. There is no suggestion that there were any time limitations imposed by Plaintiff or the circumstances of the case. The parties do not address, and the Court therefore does not make any finding, regarding the desirability of this case or how the $1,000 judgment in this case compares with similar cases. There is no indication that counsel had any professional relationship with Plaintiff other than on this case. Likewise, there is no evidence of the kind of fee arrangement between Plaintiff and his attorney; in cases such as this, however, the attorney generally gets a portion of a settlement amount or is awarded a fee pursuant to the Act (*i.e.*, there is no fixed fee). As to the results obtained, the Court notes Defendant paid Plaintiff $1,000 simply because Defendant would have incurred far greater costs and attorney fees if Defendant had continued to litigate this matter. The Court concludes that none of the factors discussed above weighs in favor of awarding Plaintiff an amount greater than the customary fee based on his counsel's experience and the reasonable time and labor involved.

The Court now turns its analysis to determine an appropriate fee based on hours *reasonably expended* at a *reasonable hourly rate*. For the reasons stated below, and after analyzing the invoice submitted by Plaintiff to ensure that the hours billed and hourly rates are

reasonable, the Court concludes that it must reduce the hourly rates for the attorney and paralegals and dramatically reduce the number of hours billed by them.

    2.    *Reasonable Hourly Rates*

Defendant argues that the billing rates proposed by Plaintiff are unreasonable because they do not reflect what the marketplace dictates. Defendant does not indicate what it believes the reasonable billing rates should be in this case.

The Court relies on the State Bar of Michigan's 2007 Economics of Law Practice Survey ("the Survey") as evidence of a reasonable billing rate in this district. Michigan federal courts routinely use this publication as evidence of reasonableness in determining attorney's fees. *See Int'l-Matez Tank Terminals-Ill. v. Chemical Bank*, No. 1:08-cv-1200, 2010 WL 3238917, at *6 (W.D. Mich. Aug. 16, 2010); *Meyer v. Macomb Twp. of Macomb Cnty., Mich.*, No. 06-14953, 2010 WL 891268, at *2 n.3 (E.D. Mich. Mar. 10, 2010); *Asmar v. Benchmark Literacy Grp., Inc.*, No. 04-70711, 2007 WL 925623, at *3 (E.D. Mich. Mar. 28, 2007).

According to his affidavit, Attorney Nitzkin has been a licensed attorney for 24 years. He seeks fees for his work at an hourly rate of $300.00. The Survey indicates that the median billing rate of litigation attorneys with Attorney Nitzkin's tenure is $200.00. Likewise, the mean litigation rate for law firms is $200.77, and the 50th percentile rate is $195.00. Accordingly, the Court finds that: (a) an hourly billing rate of $175.00 is reasonable (in fact, it is probably more than reasonable) for this type of representation,[1] and (b) such a rate will sufficiently encourage

---

[1] The Court also notes that the Sixth Circuit upheld this Court's determination of reasonable rates of $170.00 and $180.00 for trial and appellate attorneys, respectively, in a Family and Medical Leave Act case decided in 2007. *See Barrett v. Detroit Heading, LLC*, No. 05-72341, 2009 WL 3465366 (E.D. Mich. Oct. 23, 2009). Family and Medical Leave Act cases are, without question, far more complicated than cases covered by the Act, generally, and this case, specifically.

7

competent representation in this community for cases arising under the Act. Likewise, the Court finds that the paralegal billing rate of $140.00/hour proposed by Plaintiff is excessive. Based on the Court's review of the Survey and the fact that a seasoned attorney would be reasonably compensated at $175.00/hour, the Court concludes that a billing rate of $50.00/hour for paralegal work is reasonable in this case.

        *3.     Excessive/Unreasonable Hours*

It is Plaintiff's burden to justify the reasonableness of such work; however, Plaintiff did not address that burden in his motion and elected not to file a reply brief after Defendant made that burden evident. The Court has carefully, and repeatedly, reviewed the billing records submitted by Plaintiff. The Court has considered the reasonableness of the hours billed from the standpoint of both: (1) specific instances of excessive and/or unreasonable billing, and (2) the global number of hours set forth in the invoice. In reviewing the invoices submitted to the Court, it is clear that Plaintiff made no effort to review the records before filing the instant motion. Based on: (a) the Court's experience with similar cases, (b) the Court's experience overseeing litigation cases for more than thirty years, and (c) common sense, the Court is astonished by the billing records submitted by Plaintiff. The sheer number of hours claimed significantly exceeds the number of hours the Court has ever been asked to compensate a party in a case that settled only two months after the scheduling conference. In other words, the Court finds that the hours claimed are unreasonable and excessive and, as such, must be adjusted accordingly.

As to specific instances of unreasonable or excessive billing, Defendant argues that: (a) 7.6 hours of billed time are for fees clearly related to Plaintiff's claims against Experian, (b) at

8

least 3 hours are for clerical work, and (c) the August 9, 2011 entry (2.5 hours) simply states "Defendants" – with no detail of what task was performed.   Likewise, the Court finds that there are 5.9 hours that mention only Experian and another .8 hours that Experian is specifically named as one of two parties to whom the task relates.  Moreover, there are in excess of 15 hours that do not identify any specific party about whom the task was performed.  The Court also finds that all of the hours attributable to paralegal Brandy Moore (2.0 hours) involved clerical tasks, as did many hours performed by paralegal Julie LaManna.  Significantly, only 6.2 hours of the tasks performed specifically identified Defendant.

      The Court also notes that there are several global billing problems that plague the billings submitted by Plaintiff.  First, for many entries, it is not possible for the Court to ascertain what the attorney or paralegal was doing.  By way of example, not limitation, there are frequent entries that just say "Email to Gila's atty" and numerous entries (totaling almost 5 hours) with respect to a timeline.  While the Court cannot adequately analyze the reasonableness of such billing in each instance, some of these entries appear to reflect an unreasonable amount of time for a single activity.  In the Sixth Circuit, the law is clear that significant reductions in time are appropriate where such billing is used.  *See, e.g., Auto Alliance Int'l v. U.S. Customs Serv.*, 155 Fed. Appx. 226, 228 (6th Cir. 2005) (affirming 25% overall reduction for excessive and block billing); *Gratz v. Bollinger*, 354 F. Supp. 2d 929, 939 (E.D. Mich. 2005) ("As a result of such 'block billing,' the Court is not able to determine the number of hours expended on each discrete task. Thus, the Court cannot determine whether the number of hours billed are reasonable.").

      The second global concern with Plaintiff's invoiced hours is the duplication of efforts between the attorney and a paralegal, *i.e.*, many of the entries suggest that paralegal Julie

9

LaManna and Attorney Nitzkin addressed/reviewed the same materials. While a party is certainly entitled to have multiple persons working on his behalf, the Court finds that it is not reasonable to consistently bill a party for two people to do the same work and/or review each other's work. *See Reed*, 179 F.3d at 472 (affirming a district court's reduction of a claim of attorney's fees by a factor of 20% and 50% where the district court's review of the documentation of hours was inadequate to "identify distinct claims and the issues addressed, assess the necessity for multiple counsel, and distinguish between redundant, unnecessary, and duplicated work effort"); *Wayne v. Village of Sebring*, 36 F.3d 517, 532-33 (6th Cir. 1994) (holding that the lower court may determine that an indefinite number of hours claimed by the attorneys may be reduced for being excessive or duplicitous); *Coulter v. State of Tenn.*, 805 F.2d 146, 152 (6th Cir. 1986) (approving 50% across-the-board reduction of certain claimed fees based on concerns of duplication of effort). Third, as mentioned above, the Court is unable to ascertain whether many of the tasks were performed with respect to: (1) only Experian, (2) only Defendant, or (3) both parties.

Therefore, although it is not easy to identify each and every instance of excessive and unreasonable billing in the invoice submitted to the Court, the Courts find that the 16.7 attorney hours and 16.2 hours claimed must be reduced substantially. *See Auto Alliance, Gratz, Reed, Village of Sebring* and *Coulter*, *supra*. *See also Tinch v. City of Dayton*, 199 F.Supp. 2d 758 (S.D. Ohio 2002) (across the board reductions are appropriate where a court ascertains numerous occurrences of excessive billing and/or misbillings because such reductions serve to account for similar instances that are not so easily ascertainable by the court). The difficulty in determining exactly what hours were reasonably performed and billed is especially true where the moving

10

party fails to provide any support for the reasonableness of such hours, as Plaintiff has failed to do here. Thus, the Court shall approve 5.5 attorney hours and 5.0 hours of paralegal time. This approximately 66% reduction in hours is based on the Court's findings that, among other things, discussed above, (1) it is generally unclear whether the tasks performed related to Defendant at all or, if they were related to Defendant, whether the tasks also related to Experian, and (2) about 10% of the billed time was for clerical work. Moreover, and more importantly, the Court finds that an attorney's fee award based on 5.5 attorney hours and 5.0 paralegal hours reasonably reflects the necessary work required for a case of this nature, particularly when Plaintiff settled with Defendant only two months after the scheduling conference. Accordingly, the Court concludes that the reasonable attorney's fee award in this case is $1,212.00 (*i.e.*, 5.5 hours at $175.00/hour ($962.00) plus 5.0 hours at $50.00/hour ($250.00).

*4. Costs*

Plaintiff requests costs of $410.00 for pursuing his claims. Again, Plaintiff offers no reason why Defendant should be responsible for the entirety of those costs. As Plaintiff sued two parties, the Court shall attribute 50% of the costs to each of the sued parties. In other words, the Court concludes that Defendant must pay Plaintiff $205.00 for costs.

## IV.  CONCLUSION

Accordingly, and for the above reasons, IT IS HEREBY ORDERED that Plaintiff's motion for attorney's fees and costs [dkt 56] is GRANTED IN PART and DENIED IN PART. IT IS FURTHER ORDERED that Plaintiff is entitled to costs of $205.00 and a reasonable attorney's fee of $1,212.00, for an aggregate total of $1,417.00.  IT IS FURTHER ORDERED that Defendant shall pay the aggregate award of $1,417.00 to Plaintiff's counsel within 15 days of the date of this Opinion and Order.

IT IS SO ORDERED.

S/Lawrence P. Zatkoff
LAWRENCE P. ZATKOFF
UNITED STATES DISTRICT JUDGE

Dated: December 20, 2012